# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTEZZA SIMPSON, | : |
| | : |
|     Plaintiff, | : |
| | : |
|   v. | : Case No.: 2:21-cv-1254 |
| | : |
| VARIETY WHOLESALERS, INC. d/b/a | : |
| ROSES DISCOUNT STORE, | : |
| | : COMPLAINT IN CIVIL ACTION |
|     Defendant. | : |
| | : |

Filed on Behalf of Plaintiff:
Artezza Simpson

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:   (412) 540-3399
E-mail:   jward@jpward.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARTEZZA SIMPSON,** | : |
| **Plaintiff,** | : |
| v. | : **Case No.:** |
| **VARIETY WHOLESALERS, INC. d/b/a ROSES DISCOUNT STORE,** | : |
| **Defendant.** | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Artezza Simpson, by and through the undersigned counsel, J.P. Ward & Associates, and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Variety Wholesalers, Inc. d/b/a Roses Discount Store, of which the following is a statement:

## PARTIES

1. Plaintiff, Artezza Simpson (hereinafter "Ms. Simpson"), is an adult individual who currently resides at 502 Seddon Avenue, Braddock, Pennsylvania 15104.

2. Defendant, Variety Wholesalers, Inc. d/b/a Roses Discount Store (hereinafter "Roses"), is a corporation with a place of business located at 1300 Hoffman Boulevard, West Mifflin, Pennsylvania 15122.

## NATURE OF THE ACTION

3. This action arises under the Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*, the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§ 951-963, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Ms. Simpson's discrimination claims pursuant to 28 U.S.C. § 1331.

5. Ms. Simpson is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6. Ms. Simpson filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations on or about March 16, 2020 under case number 533-2021-00979.

7. Ms. Simpson was issued a Notice of Suit Rights from the EEOC on or about June 22, 2021. A true and correct copy of the Notice of Suit Rights is attached hereto, made a part thereof, and referenced as "Exhibit A."

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8. Ms. Simpson began her employment with Roses on or about December of 2018 and left Roses in August of 2019. Ms. Simpson returned to Roses briefly in March of 2020, but due to COVID-19 Driver's License Center closures, Ms. Simpson was unable to obtain her required identification until about June 7, 2020 when she was able to fully return.

9. On or about March of 2020, Ms. Simpson was promised the position of Customer Services Manager.

10. Ms. Simpson was qualified for her position, satisfactorily performed her job duties, and had no negative performance reviews from Roses.

11. At all times relevant hereto, Ms. Simpson identifies as an Atheist.

12. Ms. Simpson was severely and pervasively harassed on the basis of her religious identity in the workplace.

13. Another employee of Roses, Dana Heaps, (hereinafter "Ms. Heaps") subjected Ms. Simpson to a hostile work environment on the basis of her religious identity.

14. On several occasions, Ms. Heaps called Ms. Simpson "the devil's daughter" and referred to Ms. Simpson as a "Satanist" in front of customers.

15. Furthermore, Ms. Heaps made regular unwanted and inappropriate gestures toward Ms. Simpson. Ms. Heaps stroked Ms. Simpson's hair and made comments such as "God told me to tell you that Jesus loves you."

16. As a direct result of the abovementioned harassment Ms. Simpson was subjected to by Ms. Heaps, Ms. Simpson suffered severe panic attacks.

17. Ms. Simpson reported this discriminatory conduct to her relevant supervisors at Roses.

18. Ms. Simpson's supervisors first maintained that Ms. Simpson should "just ignore" Ms. Heaps, rather than address Ms. Simpson's concerns.

19. Due to the inaction of management, Ms. Simpson made an official report, via email, to upper management.

20. As a result of this report to upper management, Roses required all employees at the relevant location to watch a harassment training video but failed to discipline Ms. Heaps in any way for her actions.

21. Following the report made by Ms. Simpson, and the harassment training, Ms. Heaps's husband entered the store and physically threatened Ms. Simpson, further perpetuating the hostile work environment.

22. Ms. Heaps remained employed at Roses following this incident as well.

23. Due to the severe panic attacks Ms. Simpson suffered as a result of the harassment and the hostile work environment she was subjected to, Ms. Simpson made a visit to her physician on or about October 16, 2020.

24. Ms. Simpson was advised by her physician that the panic attacks were being directly caused by Ms. Simpson's hostile work environment.

25. Additionally, Ms. Simpson's Post-Traumatic Stress Disorder ("PTSD"), resulting from past trauma on the basis of religious discrimination, was triggered by the harassment and hostile work environment she endured at Roses.

26. As a result, Ms. Simpson was advised by her physician to take a week off from work.

27. Upon her return, Ms. Simpson continued to be forced to work alongside Ms. Heaps until Ms. Heaps voluntarily left her position on or about December 19, 2020.

28. Following the EEOC Charge of Discrimination filed by Ms. Simpson, Ms. Simpson has endured retaliatory conduct and disparate treatment from her supervisors at Roses.

29. Ms. Simpson has experienced heightened scrutiny, and discipline in the form of "write-ups", for actions which she had never been disciplined for prior to the filing of the Charge.

30. Further, Ms. Simpson experienced disparate treatment by and through her relevant supervisors. These supervisors forced Ms. Simpson to wear khaki pants while at work.

31. Similarly situated employees were permitted to wear black jeans in lieu of khaki pants, illustrating the retaliatory animus of the supervisors at Roses.

32. On or about June of 2021, Ms. Simpson was injured and invoked her right to FMLA.

33. Ms. Simpson returned from FMLA leave on or about August 25, 2021.

34. Upon her return from her FMLA leave, Ms. Simpson discovered that her colleagues received a pay raise from Roses. Upon information and belief, Ms. Simpson should be compensated at $9.90 per hour, but instead is compensated at $9.50 per hour.

35. Ms. Simpson did not receive the pay raise received by her similarly situated coworkers and therefore experienced an adverse employment action upon her return from FMLA leave.

## COUNT I
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII AND THE PHRA

36. Ms. Simpson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

37. The Third Circuit Court has stated, "we apply the well-established framework for hostile work environment claims with respect to other protected categories to our analysis of a hostile work environment claim made on account of religion." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265 (3d Cir. 2001)

38. Therefore, the protections established by Title VII "against a hostile work environment that is abusive to an employee on the basis of his or her race," (*Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015)) also applies to an employee on the basis of his or her religion.

39. In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondent superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

40. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

41. Because Complainant is able to state a prime facie case for hostile work environment under Title VII, so too will she be able to state such a claim under the PHRA.

42. The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

43. Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

44. Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

45. Ms. Simpson identifies as an Atheist and is therefore within a protected class under Title VII.

46. Ms. Simpson endured severe and pervasive harassment in the form of comments and gestures, made by Ms. Heaps, on the basis of Ms. Simpson's religious identity.

47. The abovementioned comments and gestures were made in the presence of customers and Ms. Simpson's peers.

48. This severe and pervasive harassment, on the basis of Ms. Simpson's religious identity, caused Ms. Simpson to suffer panic attacks related to the harassment.

49. Ms. Simpson reported the comments and conduct of Ms. Heaps to Roses.

50. Ms. Simpson's supervisors first told her to "just ignore" the harassment and hostile work environment. However, Ms. Simpson could not ignore the conduct and reported it to upper management.

51. As a result of the report to upper management, Roses held a general harassment training for all employees. Even so, Roses failed to discipline Ms. Heaps for her actions, thereby perpetuating the hostile work environment.

52. Furthermore, Ms. Simpson was forced to continue to work with Ms. Heaps and was physically threatened by Ms. Heaps's husband as a result of the religious harassment report.

53. Ms. Simpson again suffered panic attacks following this physical threat and her PTSD was triggered.

54. Ms. Heaps continued to be employed by Roses until she voluntarily ended her employment with Roses on or about December 19, 2020, however, Ms. Heaps was never disciplined for her misconduct.

55. As a direct and proximate cause of the aforementioned conduct, Ms. Simpson suffered actual damages, including, but not limited to emotional distress damages, all in the past, present and future.

56. As set forth hereinabove, Roses's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Ms. Simpson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT II
## RETALIATION IN VIOLATION OF
## TITLE VII AND THE PHRA

57. Ms. Simpson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

58. To establish a prima facie case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between his "participation in the protected activity and the adverse employment action." *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing to *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006); See also, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

59.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

60.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.,* 390 F.3d 760, 764 (3d Cir. 2004)).

61.     "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center* 691 F.3d 294, at 307 (3d Cir.2012), citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir.2007).

62.     Ms. Simpson engaged in a protected activity protected by Title VII by reporting the religious discrimination in the workplace to management.

63.     Ms. Simpson further engaged in a protected activity when she filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

64.     Despite Ms. Simpson's report of religious discrimination in the workplace, Roses took no action to discipline Ms. Heaps for the harassment and discrimination.

65.     Following Ms. Simpson's Charge of Discrimination filed with the EEOC, Ms. Simpson began to experience disparate treatment and retaliation.

66.     Ms. Simpson was subjected to heightened scrutiny by her supervisors and began to be disciplined for actions for which she had never been disciplined prior to the filing of the Charge.

67. Additionally, Roses, by and through relevant supervisors, forced Ms. Simpson to wear khaki pants while at work. Importantly, similarly situated employees were permitted to wear black jeans in lieu of khaki pants.

68. Due to the fact that the abovementioned disparate treatment affects Ms. Simpson's privileges of employment, the disparate treatment and retaliatory conduct is an adverse employment action.

69. Furthermore, this adverse employment action took place following Ms. Simpson's submission of the Charge of Discrimination to the Equal Employment Opportunity Commission, giving rise to a causal connection and inference of retaliation.

WHEREFORE, Plaintiff, Ms. Simpson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Simpson requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT III
## FMLA RETALIATION

70. Ms. Simpson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

71. The Family Medical Leave Act of 1993 permits eligible employees to take up to twelve (12) work weeks for a serious health condition that makes the employee unable to perform the functions of his position. 29 U.S.C.A §2611(2), 29 U.S.C.A §2612(a)(1)(d).

72. Roses is classified as an "employer" subject to the requirements of the FMLA. "Employer" includes any "public agency" as defined in section 3(x) of the Fair Labor Standards Act of 1938, (29 U.S.C. § 203(x)) which includes "any agency of… a State."; 29 U.S.C. § 2611(4)(A)).

73. In order to prevail on a claim of retaliation under the FMLA, one must prove that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

74. Ms. Simpson invoked her right to FMLA leave on or about June of 2021.

75. Ms. Simpson is an eligible employee under 29 U.S.C.A §2611(2) who invoked her right to FMLA-qualifying leave for a serious health condition which affected her ability to perform the functions of her position.

76. On or about August 25, 2020, Ms. Simpson suffered an adverse employment decision in the form of disparate pay when she discovered that her similarly situated coworkers had received a pay increase which she did not receive.

77. "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)).

78. Due to the temporal proximity of the actions taken by Roses, there is more than an inference, and in fact a direct causal relationship between Ms. Simpson's invocation of her FMLA rights and the pay disparity.

79. As a direct and proximate result of the aforementioned conduct, Ms. Simpson suffered actual damages, including, but not limited to, lost wages, emotional distress all in the past present and future.

WHEREFORE, Plaintiff, Ms. Simpson, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Roses, and enter any and all wages due to Ms.

Simpson, in excess of arbitration limits, as well as costs and attorney's fees and liquidated damages pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2601 *et seq.*

**JURY TRIAL DEMANDED**

                              Respectfully submitted,

                              **J.P. WARD & ASSOCIATES, LLC.**

Date: September 17, 2021                By: */s/ Joshua P. Ward*
                                                   Joshua P. Ward (Pa. I.D. No. 320347)
                                                   Kyle H. Steenland (Pa. I.D. No. 327786)

                                                   J.P. Ward & Associates, LLC.
                                                   The Rubicon Building
                                                   201 South Highland Avenue
                                                   Suite 201
                                                   Pittsburgh, PA 15206
                                                   Counsel for Plaintiff